**Myles H. PENNINGTON, Appellant,**

v.

**JERRY F. GURKOFF, D.O.,
P.A., Appellee.**

No. 2–94–004–CV.

Court of Appeals of Texas,
Fort Worth.

May 18, 1995.

Rehearing Overruled July 13, 1995.

Danny Duane Pitzer, Arlington, for appellant.

Annette Regan Loyd, Jan R. Thurman, Thurman & Andres, P.C., Arlington, for appellee.

Before LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

This case involves a fee dispute in which Jerry Gurkoff, D.O., filed suit against Myles H. Pennington, an attorney, to collect an unpaid fee for services rendered as an expert witness. The trial court awarded Dr. Gurkoff $700.00 as reasonable compensation for his services, plus attorney's fees. Pennington now appeals from the judgment.

In eight points of error, Pennington contends that: the trial court erred in denying his motion for summary judgment; the evidence was factually insufficient to support recovery of expert witness fees under any contractual theory, as a sworn account, or under quantum meruit, and the recovery was not supported by the pleadings; and the award of attorney's fees was excessive as a matter of law, no recovery was due under quantum meruit, and no contractual theory supported the recovery of attorney's fees.

We affirm the trial court's award of $700 in expert witness fees and reverse and render the award of attorney's fees.

Jerry Gurkoff, D.O., is an orthopedic surgeon who was retained by Pennington & Associates, a law firm, as a consultant and expert witness in legal proceedings brought

by the law firm on behalf of its client, James Bowman. Bowman, who had suffered an on-the-job injury, received initial treatment from Jeffrey Thompson, M.D., a family physician. However, because Bowman's injuries required more specialized treatment, Dr. Thompson referred him to Dr. Gurkoff.

Bowman subsequently hired Pennington & Associates to represent him in a personal injury suit. Christian Jenkins, an associate attorney with the law firm, contacted Dr. Gurkoff, who orally agreed to testify on the subject of Bowman's medical conditions. The parties then set a date and time for Dr. Gurkoff's deposition, but the amount of his fee was never determined. The videotaped deposition lasted approximately two and one-half hours. Thereafter, Dr. Gurkoff's office forwarded a statement in the amount of $1,512.50 to Pennington & Associates for services rendered, plus expenses. Specifically, the statement covered two hours and forty-five minutes of Dr. Gurkoff's time, and included expenses for copies of Bowman's medical records. Pennington refused to pay the fee, claiming it was unreasonable in amount. Subsequently, Dr. Gurkoff filed suit following several unsuccessful collection attempts. Before trial, Dr. Gurkoff and Pennington filed respective motions for summary judgment, each of which was denied by the trial court. Following a trial on the merits, the trial court concluded that Pennington did, in fact, contract and agree to pay Dr. Gurkoff a reasonable fee as an expert witness. The trial court then awarded Dr. Gurkoff $700 as reasonable compensation, plus interest and attorney's fees.

■ In his first point of error, Pennington contends that the trial court erred in denying his pretrial motion for summary judgment. The case law is clear that after a party has moved unsuccessfully for summary judgment and subsequently loses in a conventional trial on the merits, as in this case, an interlocutory order overruling the summary judgment motion is not reviewable on appeal. *Harkins v. State,* 773 S.W.2d 401, 403 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Jones v. Hutchinson County,* 615 S.W.2d 927, 930 (Tex.Civ.App.—Amarillo 1981, no writ). Although there are exceptions to this general

rule, none apply in this case. Pennington's first point of error is therefore overruled.

In his remaining seven points of error, Pennington essentially challenges the trial court's finding that there was an agreement between the parties whereby Dr. Gurkoff would serve as an expert witness for which Pennington would pay a reasonable fee.

■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Arena v. Arena,* 822 S.W.2d 645, 650 (Tex.App.—Fort Worth 1991, no writ); *Raposa v. Johnson,* 693 S.W.2d 43, 45 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.).

■ In his second point of error, Pennington contends that the evidence is factually insufficient to support the trial court's award of expert witness fees under any contractual theory. An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). When reviewing a trial court's findings of fact for factual sufficiency, we are required to consider all of the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

In this case, the trial court made the following findings of fact: (1) that Pennington, by and through his agents, contracted and agreed to pay Dr. Gurkoff a fee to serve as an expert witness on behalf of Pennington's client; (2) that Dr. Gurkoff gave a deposition as agreed and substantially performed under the agreement; (3) that Pennington failed and refused to pay the fee; (4) that Dr. Gurkoff made demand for payment of the fee

and Pennington refused to timely tender a just amount; and (5) that a reasonable fee for Dr. Gurkoff's services was $700.

The evidence at trial revealed that Dr. Gurkoff treated James Bowman for complications resulting from cervical disk disease, a problem exacerbated by a work-related injury. After an initial evaluation, Dr. Gurkoff performed an anterior cervical diskectomy on Bowman's back. Subsequently, Dr. Gurkoff was contacted by Christian Jenkins, an attorney with Pennington & Associates, and was retained as a consultant regarding Bowman's injuries. Jenkins asked Dr. Gurkoff to interpret radiographs and explain the extent of Bowman's injuries. When later asked to give his testimony via deposition, Dr. Gurkoff agreed and Jenkins followed up with a letter confirming the time and place of the deposition. Dr. Gurkoff believed at all times that Jenkins was acting as Bowman's attorney and that Jenkins was an associate at Pennington & Associates. After participating in the deposition, Dr. Gurkoff forwarded a bill for services rendered to the law firm. Dr. Gurkoff billed only two hours and forty-five minutes of his time, despite his testimony that he actually spent closer to four hours preparing for the deposition and consulting with Jenkins. Dr. Gurkoff further testified that he understood that Myles Pennington would be responsible for the payment of the fees. However, Pennington later refused to pay the bill and claimed it was unreasonable. In a letter to Dr. Gurkoff, Pennington stated that he tried on three separate occasions before the deposition to ascertain the amount of Dr. Gurkoff's fee. Pennington also stated, "[w]e anticipated delivering a check to Dr. Gurkoff prior to the deposition; however, they refused to quote a fee." Although Pennington denies ever contractually agreeing to pay Dr. Gurkoff, he acknowledged in the letter that his client was only liable for any reasonable fees.

After reviewing the entire record, we conclude that there is sufficient evidence to support the trial court's finding that Pennington contracted and agreed to pay Dr. Gurkoff a reasonable fee. At trial Pennington did not challenge the existence of an agreement to pay for Dr. Gurkoff's services. Instead, the focus was on the reasonableness of Dr. Gurkoff's fee. Therefore, the critical issue on appeal is not whether an agreement existed, but whether it was enforceable given that the parties never reached a consensus about Dr. Gurkoff's fee.

■ A contract is not enforceable if the alleged agreement is so indefinite that it is impossible for a court to fix the legal obligations and liabilities of the parties. *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Gannon v. Baker,* 830 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred. *Gannon,* 830 S.W.2d at 709; *University,* 773 S.W.2d at 710. However, where parties have done everything else necessary to make a binding agreement for services, as in this case, their failure to specify a price does not leave the contract so incomplete that it cannot be enforced. In such a case, a presumption arises that a reasonable price was intended. *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex. 1966); *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 739–40 (Tex.App.—Houston [1st Dist.] 1992, writ denied). It is clear from the record that the trial court acted accordingly, first finding the existence of an otherwise complete agreement, then determining a reasonable fee to be $700. Accordingly, point of error two is overruled.[1]

In his eighth point of error, Pennington contends that the trial court erred in awarding expert witness fees not supported by the pleadings. In his First Amended Original

---

1. In his third and sixth points of error, Pennington contends that the trial court erred in awarding expert witness and attorney's fees to Dr. Gurkoff because no recovery was proved under quantum meruit. Pennington also urges in his fifth point of error that the evidence was factual-ly insufficient to establish recovery under a sworn account theory. However, having already affirmed the trial court's finding of an express contract, we need not address Pennington's points of error three, five, and six.

Petition, Dr. Gurkoff alleged that he was retained "as an expert witness regarding the physical condition and health of *Christopher Bowman* ... [and] served as an expert witness, performing certain tasks for [Pennington], including review of *Christopher Bowman's* medical file, consultation with counsel and appearance at a deposition." [Emphasis added.] Dr. Gurkoff's direct examination at trial resulted in the following colloquy:

Q. Dr. Gurkoff, have you ever had a patient named Jim or James Bowman?

A. Yes, ma'am.

Q. Approximately when did you come to be acquainted with Mr. Bowman?

[PENNINGTON'S ATTORNEY]: Your Honor, we're going to object to any further questions about James or Jim Bowman.

THE COURT: For what reasons?

[PENNINGTON'S ATTORNEY]: Your Honor, their pleadings say that he offered and gave testimony to Mr. Jenkins, reviewing the file of Christopher Bowman. He testified at the deposition about Christopher—reviewing Christopher Bowman's medical file, consultation with counsel and appearance at a deposition. And any testimony about James Bowman would come as a surprise to us at this time.

THE COURT: Well, as I understand it, this is all involving a fee.

Is Dr. Gurkoff—are you alleging he's owed the fee, Ms. Lloyd, with regard to Christopher Bowman or with regard to James Bowman?

[GURKOFF'S ATTORNEY]: Your Honor, there's a typographical error in my pleadings. It says "Christopher Bowman" when in fact it should be "Jim Bowman." I believe that Mr. Jim Bowman has been the subject of the depositions and other discovery previously taken in the case, and it's just a misnomer in the pleadings that are on file in this cause.

[PENNINGTON'S ATTORNEY]: Your Honor, I don't think the difference between "Jim" and "Christopher" is a typographical error.

THE COURT: Well, which patient is it that they're claiming he's owed this fee over?

[PENNINGTON'S ATTORNEY]: They're claiming that he's owed—the testimony was given about James Bowman; however, their pleadings talk about Christopher Bowman.

THE COURT: Then your objection is overruled.

After repeated objections of this nature, the trial court orally granted Dr. Gurkoff leave to file a trial amendment to cure the defective pleadings. However, no trial amendment was actually filed. Hence, Pennington claims that the evidence still does not conform to the pleadings.

■■■ Our rules provide that if the evidence at trial is objected to on the grounds that it does not conform to the pleadings, the trial court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved and the objecting party fails to satisfy the court that the amendment would prejudice the defense. *See* TEX.R.CIV.P. 66. A trial court has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *Greenhalgh v. Service Lloyds Ins. Co,* 787 S.W.2d 938, 939 (Tex. 1990). As a general rule, trial amendments must be in writing and signed by the party or his attorney. *See* TEX.R.CIV.P. 45(d). However, in limited instances, an oral trial amendment is allowed if dictated into the record to the court reporter. *See, e.g., Phillips v. Latham,* 551 S.W.2d 103, 105 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.). Neither version was submitted in the instant case. In the absence of a trial amendment, we must agree with Pennington that the evidence does not conform to the live pleadings. We hold, however, that this defect is harmless under the circumstances.

■■■ To constitute *reversible error,* a variance between proof and pleadings must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 937 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66

L.Ed.2d 474 (1980); *USX Corp. v. Salinas,* 818 S.W.2d 473, 481 (Tex.App.—San Antonio 1991, writ denied) (op. on reh'g). Although the name "Christopher Bowman" was used in Dr. Gurkoff's pleadings, the subject of the deposition, correspondence, and discovery exchanged prior to trial exclusively concerned James Bowman. Consequently, we hold that the use of the term "Christopher Bowman" in the pleadings did not constitute a surprise or prejudice Pennington's defense. Point of error eight is overruled.

In his fourth point of error, Pennington complains that the trial court erred in awarding Dr. Gurkoff attorney's fees because the claim for expert witness fees was excessive as a matter of law. Texas law allows for recovery of reasonable attorney's fees, in addition to the amount of a valid claim and costs, if the claim is based on an oral or written contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986); *Lyons v. Montgomery,* 701 S.W.2d 641, 644 (Tex.1985); *Staff Indus., Inc. v. Hallmark Contracting, Inc.,* 846 S.W.2d 542, 548 (Tex.App.—Corpus Christi 1993, no writ). To recover such fees, however, the claimant must be represented by counsel, must present the claim to the opposing party, and payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. TEX.CIV.PRAC. & REM. CODE ANN. § 38.002 (Vernon 1986). *See Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex. 1981). In the present case, Dr. Gurkoff was represented by counsel, and Pennington did not tender a just amount within the requisite thirty day period. Instead, the controversy centers on whether Dr. Gurkoff's presentment of a claim for a higher amount than ultimately awarded supports recovery of attorney's fees.

Pennington contends that Dr. Gurkoff's original claim for expert witness fees, which was reduced by the trial court, was excessive. A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt. *Findlay v. Cave,* 611 S.W.2d 57, 58 (Tex.1981). However, absent some evidence of unreasonableness or bad faith, a demand is not excessive merely because it is greater than that which is later determined at trial to be due. *Id.; Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 758 (Tex.App.—Dallas 1988, writ denied). In the present case, there was no evidence of bad faith on the part of Dr. Gurkoff. However, by implication, the trial court found that Dr. Gurkoff's original demand of $1,512.50 was unreasonable considering the duration and type of services rendered. In fact, the trial court actually awarded less than half of the amount Dr. Gurkoff originally charged. Based on review of the record, we find that the expert witness fee originally tendered was unreasonable, and therefore excessive. Accordingly, we hold that Dr. Gurkoff is not entitled to recover attorney's fees as a matter of law. Point of error four is sustained.

By sustaining Pennington's challenge to the trial court's award of attorney's fees, we need not address his seventh point of error.

We affirm that portion of the trial court's judgment awarding Dr. Gurkoff $700 in expert witness fees, and reverse and render the award of attorney's fees.